IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIEUTENANT JAMES DeANGELO<br><br>                              Plaintiff,<br><br>         v.<br><br>CITY OF PHILADELPHIA and<br>CAPTAIN MARIA ORTIZ-RODRIGUEZ<br><br>                              Defendants. | **Civil Action No.** _____<br><br>Jury Trial Demanded |

## **COMPLAINT**

Plaintiff, Lieutenant James DeAngelo, by and through his counsel, The Derek Smith Law Group, PLLC, hereby bring this civil action against the City of Philadelphia and Captain Maria V. Ortiz-Rodriguez with regard to hostile work environment, harassment, discrimination, disparate treatment, associational disability retaliation, and retaliation, all in violation of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.*; the Americans with Disabilities Act, 42 U.S.C. §12102 *et. seq.*; the Pennsylvania Human Relations Act, 43 P.S. §§951-963; and, the Family and Medical Leave Act, 29 U.S.C.A. §2601, *et. seq.* Plaintiff further alleges common law Intentional Infliction of Emotional Distress. Plaintiff alleges and avers:

### **The Parties**

1. Plaintiff, Lieutenant James DeAngelo ("Plaintiff"), is an adult Caucasian male individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania that has been employed by the City of Philadelphia Police Department since December 16, 2002, and has achieved and served under the rank of Lieutenant, since November 11, 2012.

1

2.      Defendant, City of Philadelphia, is a municipality of the Commonwealth of Pennsylvania and it owns, operates, manages, directs, and controls the Philadelphia Police Department, which employs the Plaintiff and Captain Maria Ortiz-Rodriguez, as well as other individuals identified herein, who/whom are relevant and at all times were acting under color of state law, and operating pursuant to official policies, customs, and practices of the Defendant.

3.      Defendant, Captain Maria Virginia Ortiz-Rodriguez ("Defendant Ortiz-Rodriguez"), is an adult Hispanic or Latino female of Puerto Rican descent and an employee of Defendant, City of Philadelphia, and at all times relevant was a superior and supervisor of Plaintiff.

4.      Defendant, City of Philadelphia, agreed, accepted, adopted, approved, acquiesced, and/or otherwise is bound by the actions, omission, and conduct of is officers, managers, supervisor, employees, and contractors, acting in accordance with his/her/their authority, including Defendant Ortiz-Rodriguez.

**Jurisdiction and Venue**

5.      Subject matter jurisdiction is appropriate before this Court under Federal Question Jurisdiction, 28 U.S.C. §1331, and the Court has supplemental jurisdiction over the State law claims. 28 U.S.C. §1367.

6.      Venue is proper before this Court as all actions giving rise to the litigation occurred in the Eastern District of Pennsylvania. (i.e. Berks, Bucks, Chester, Delaware, Lancaster, Lehigh, Montgomery, Northampton, and/or Philadelphia County).

7.      Plaintiff has also exhausted administrative remedies to bring his employment discrimination claims by having dual filed a Charge of Discrimination or complaint with both the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission, and having received a Notice of Right to Sue.

**Summary of Material Facts**

8. Plaintiff has a long and accomplished employment history with Defendant City of Philadelphia, having worked his way from Police Officer in 2002, to Sergeant, and then to Lieutenant before becoming the Administrative Lieutenant under Captain William Fisher in the 26th District, around 2021.

9. Under Captain Fisher, Plaintiff learned and adequately accomplished his responsibilities as the Administrative Lieutenant for the 26th District, and performed well.

10. On December 20, 2021, Plaintiff came under the direct supervision of the new Captain for the 26th District, Defendant, Maria Ortiz-Rodriguez (Hispanic or Latino female).

11. Plaintiff knew of Defendant Ortiz-Rodriguez before her Captaincy of the 26th District as they both had been on the eligible list of individuals for promotion to Police Captain, and Plaintiff knew of Defendant Ortiz-Rodriguez's reputation for having connections within the City and Hispanic community, and her husband, Javier Rodriguez, a high-ranking Inspector in the Philadelphia Police Department.

12. Almost immediately under the Captaincy of Defendant Ortiz-Rodriguez there was a movement to place Hispanic individuals in 5 squad or administrative roles and removing non-Hispanic individuals from those roles to surround herself with Hispanic and Latino individuals.

13. For example, and not inclusive of all examples, Defendant Ortiz-Rodriguez removed and/or replaced Cinnamon Smith (non-Hispanic) with Javier Cortez (Hispanic) and Doreen Napper (non-Hispanic) with Jazmine Ortiz (Hispanic).

14. Defendant Ortiz-Rodriguez sought to place Guadalupe Colon (Hispanic) and Seargent Reyes (Hispanic) in administrative roles.

15. Defendant Ortiz-Rodriguez removed Police Officer Eyleen Archie (Non-Hispanic) and Erica Cross (Non-Hispanic) from administrative roles.

16. Plaintiff, a Caucasian male working as the Administrative Lieutenant under Defendant Ortiz-Rodriguez felt unwelcome and in fear for his position.

17. Defendant Ortiz-Rodriguez made statements to Plaintiff early-on that Plaintiff was lucky to still have his job, and lucky that Defendant Ortiz-Rodriguez had not replaced him.

18. On information and belief, Defendant Ortiz-Rodriguez had also learned of Plaintiff being eligible for intermittent Family and Medical Leave Act leave to care for his biological parents and Defendant Ortiz-Rodrigeuz was not approving and/or otherwise disagreeable.

19. Defendant Ortiz-Rodriguez attempted to change Plaintiff's work hours, which would have impacted his ability to provide childcare. Plaintiff had worked 6:00 AM to 2:00 PM under Captain Fisher and Defendant Ortiz-Rodriguez wanted Plaintiff to work 9:00 AM to 5:00 PM, which eventually ended with Plaintiff's new hours of 7:00 AM to 3:00 PM.

20. Defendant Ortiz-Rodriguez denied Plaintiff respect as a Lieutenant and did not follow the chain-of-command with regard to Plaintiff, unless following the chain-of-command meant Plaintiff took blame or otherwise responsibility for insufficiencies.

21. For example, Defendant Ortiz-Rodriguez would not acknowledge Plaintiff's presence, and referred to him as "DeAngelo", instead of Lieutenant.

22. Defendant Ortiz-Rodriguez skipped the chain-of-command when it came to informing Plaintiff of matters, such as when Defendant Ortiz-Rodriguez would not be in the office, and/or when she could not attend a meeting that Plaintiff would have to attend in her place.

23. On the other hand, when it came to tasks and taking responsibility, Defendant Ortiz-Rodriguez would order Plaintiff to do tasks and assignments that were not the responsibility of the

4

Administrative Lieutenant, and/or have him appear at meetings where the 26th District and its performance were under scrutiny (e.g. CommStat meetings).

24. Defendant Ortiz-Rodriguez spoke Spanish in front of Plaintiff with Hispanic peers and administrative 5-squad level Hispanic employees, so that Plaintiff did not understand what was being said, and was not part of the conversation.

25. Plaintiff's office was close enough to Defendant Ortiz-Rodriguez's office that he could hear her on the telephone and sometimes Defendant Ortiz-Rodriguez began speaking Spanish when discussing matters involving Plaintiff, and he would hear "DeAngelo" among the Spanish words, such that he knew/believed she was talking about him during these calls, in an unwelcome manner.

26. Early into Defendant Ortiz-Rodriguez's Captaincy at the 26th District, Plaintiff suggested to move a Police Officer Jose Dones (Hispanic) out of the district or at least away from female police officers that had complained about Officer Dones having pulled down his pants and undressing in front of them, and Defendant Ortiz-Rodriguez responded: "you worry about your fucking job."

27. Defendant Ortiz-Rodriguez made discriminatory comments to Plaintiff including telling Plaintiff they are not on the same team, and saying Plaintiff was a "white male Lieutenant" and therefore, he could not understand Defendant Ortiz-Rodriguez.

28. These comments and the other conduct were at all times unwelcome and discriminatory.

29. An internal Equal Employment Opportunity investigation conducted by Defendant, City of Philadelphia, (EEO #22-0038) concluded that during this time, Defendant Captain Ortiz-Rodriguez "failed to ensure diversity among the personnel assigned to 5 and/or 7-Squad."

30. Defendant Ortiz-Rodriguez cursed, used an elevated tone, and often became flush when speaking with Plaintiff, which she did not do with Hispanic employees.

31. Defendant Ortiz-Rodriguez was setting Plaintiff up to fail.

32. As noted, Defendant Ortiz-Rodriguez would be absent or otherwise unavailable for meetings and other events that she would have Plaintiff attend in her place, but only after the delayed notice of her unavailability—through her aide Waleska "Wally" Garcia (Hispanic) or otherwise—which would result in Plaintiff arriving late and unprepared for the meetings (e.g. meetings with School District and School District Crossing Guards).

33. Defendant Ortiz-Rodriguez placed responsibilities on Plaintiff to ensure overtime was being worked and required him to complete reports that were the responsibility of the Captain.

34. On Friday, February 25, 2022, Police Officer Eyleen Archie (non-Hispanic) made a Hardship request (i.e. request for a reasonable accommodation) for specific work hours to care for her disabled child.

35. Police Officer Archie was approved for the very same Hardship under the prior Captain, but the process requires Hardships to last or be re-evaluated on a yearly basis.

36. Defendant Ortiz-Rodriguez saw Police Officer Archie's child in the 26th District waiting to be transported for treatment and observed the tubes and assistive devices the child used for what Defendant Ortiz-Rodriguez referred to during an investigation as a rare medical condition.

37. Defendant, City of Philadelphia, did not have a formal policy for handling Hardship requests, however, Hardship requests are to be forwarded to the Commissioner for decision.

38. Police Officer Archie's Hardship request of February 25, 2022 is noted to have been received by Sergeant Jason Sommerville (non-Hispanic) and approved by Plaintiff but the Hardship request was never forwarded beyond Defendant Ortiz-Rodriguez.

6

39. Defendant Ortiz-Rodriguez verbally conversed with Plaintiff in-person about Police Officer Archie's Hardship request and told Plaintiff to deny the request; stating that when she had requested a Hardship she had been denied and if Plaintiff did not deny the request then she would deny the request.

40. Plaintiff approved the request, knowing that Police Officer Archie could not maintain employment without the Hardship due to her child's disabilities and because Plaintiff believed Defendant Ortiz-Rodriguez's reasons for denying the request were discriminatory and unsupported.

41. Defendant Ortiz-Rodriguez did not discuss at that time with Plaintiff any issues of a lack of manpower in the 26th District as a reason to deny the request.

42. On Monday, February 28, 2022, Defendant Ortiz-Rodriguez issued Plaintiff a "30 Day Notification of Reassignment", which was written notice that in 30 days, (i.e. March 28, 2022), Plaintiff would be reassigned from Administrative Lieutenant of the 26th District to Platoon Commander of 2 squad, which was a demotion in title, responsibility, schedule, and would have a significant effect and impact on Plaintiff's availability for promotion to higher positions within the police department.

43. Defendant Ortiz-Rodriguez intentionally and wrongly backdated the 30-Day Notification of Reassignment to February 24, 2022, to pre-date Officer Archie's Hardship request of February 25, 2022 and predate Plaintiff and Defendant Ortiz-Rodriguez's conversation.

44. Even after the notice of reassignment, Defendant Ortiz-Rodriguez's discriminatory mistreatment of Plaintiff continued, including her ordering Plaintiff to do work outside his responsibility with regard to overtime.

45. Police Officer Archie submitted a subsequent Hardship request on March 15, 2022, after learning the first request had not been forwarded for approval, and Defendant Ortiz-Rodriguez denied the request and the request was subsequently denied in total.

46. Plaintiff was unable to approve or deny the request as he was being demoted.

47. The same EEO investigation that concluded Defendant Ortiz-Rodriguez failed to maintain diversity in the 5 and 7-Squads determined that she "failed to provide a reasonable justification for her denying Officer Archie's hardship request."

48. After denying the Hardship request, Defendant Ortiz-Rodriguez removed Officer Archie from 5 squad (administrative level) and changed Officer Archie's hours the day after Officer Archie's year-long Hardship under the predecessor Captain expired.

49. Plaintiff verbally complained about the harassment and mistreatment but was fearful of retaliation due to Defendant Ortiz-Rodriguez having made comments to Plaintiff that she was connected with higher-ups, including her husband, and councilmembers.

50. Plaintiff suffered from an aggravation or reoccurrence of an severe injury he had sustained in the line of duty, and he submitted a request for a reoccurrence to Defendant City of Philadelphia around March 4, 2022.

51. Plaintiff provided a copy of his reoccurrence request to Defendant Ortiz-Rodriguez and Defendant Ortiz-Rodriguez sarcastically asked Plaintiff if he really believed he would get leave for a reoccurrence, and then stated "I don't think so."

52. Defendant Ortiz-Rodriguez refused to assist Plaintiff with processing the reoccurrence and made Plaintiff submit the request on his own time, which was against policy.

53. Plaintiff went out of work on his reoccurrence around March 15, 2022.

54. Plaintiff was able to return to work on August 1, 2023, which he did, but when he returned he was a Street Supervisor in the 26th District under Captain Andrew Disanto and Administrative Lieutenant James Russell.

55. Plaintiff's career with the Philadelphia Police Department has been substantially harmed by the foregoing, and he has suffered economic and non-economic damages, as a result.

56. Defendant Ortiz-Rodriguez was removed from the position of Captain and/or transferred from Captain of the 26th District on January 19, 2023.

57. There were no Hispanic or Latino Lieutenants in the 26th District for Defendant Ortiz-Rodriguez to replace Plaintiff, and she chose Lieutenant James Russell, a Caucasian that is believed to be bilingual and speak Spanish.

## COUNT ONE
### Harassment, Hostile Work Environment, Discrimination, and Disparate Treatment
*Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.*
**Plaintiff v. Defendant City of Philadelphia**

58. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

59. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 provides in relevant part:

> "It shall be unlawful employment practice for an employer (1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) limit, segregate, or classify his employees or applicants for employment in any wat which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2

60. The *prima facie* elements to a claim of harassment or hostile work environment under Title VII are: (1) the plaintiff suffered intentional discrimination because of his race or color,

9

(2) the harassment was severe or pervasive and regular, (3) the harassment detrimentally affected the plaintiff, (4) the harassment would detrimentally affect a reasonable person of the same protected class, and (5) the harasser was a supervisor or agent of the employer.

61. Here, as alleged *Supra*, Defendant City of Philadelphia, by and through Defendant Captain Maria Ortiz Rodriguez, intentionally discriminated against Plaintiff due to him being Caucasian and/or not Hispanic.

62. Defendant Ortiz-Rodriguez was a direct supervisor and Captain of the 26th District and thus her actions are binding on Defendant, City of Philadelphia.

63. Defendant Ortiz-Rodriguez made comments to Plaintiff of a discriminatory nature or at least comments that colored and evinced that her other actions were motivated by discrimination. For example, threats to replace and terminate Plaintiff, speaking Spanish in front of Plaintiff and about Plaintiff so he would not hear, not respecting Plaintiff's rank, demeaning him in front of peers, violating the chain-of-command, placing Plaintiff in situations where he would appear incompetent, ordering Plaintiff to do work that was beyond his scope of responsibilities, having Plaintiff take actions in violation of orders, policies, and procedures, and demoting Plaintiff from his position as Administrative Lieutenant and thereby causing severe adverse employment harm to his career.

64. The foregoing conduct was severe and pervasive and by way of the clearly discriminatory comments and conduct and the arguably neutral negative and adverse conduct, the Defendant City of Philadelphia, by and through Defendant Ortiz-Rodriguez, created an unreasonably hostile work environment.

65. Plaintiff verbally complained about the harassment and mistreatment but was reasonably fearful of retaliation due to Defendant Ortiz-Rodriguez having made comments to Plaintiff that she was connected with higher-ups, including her husband, and councilmembers.

66. The *prima facie* elements to a claim of discrimination are: (1) the plaintiff has a protected class, (2) the plaintiff was qualified for the position he held, (3) the plaintiff suffered an adverse employment action, and (4) there is a causal connection between the adverse employment action and the plaintiff's protected class.

67. As noted *Supra*, Defendant, Ortiz-Rodriguez, emoted and reassigned Plaintiff from Administrative Lieutenant of the 26th District at a time when Plaintiff was qualified for the position, had operated in the position with no performance deficiencies, and yet removed him from that role because of his race and/or color.

68. As a direct and proximate result of Defendant's discrimination and disparate treatment, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment, out-of-pocket expenses, emotional damages, pain and suffering, alienation, loss of confidence, loss of reputation, and other similar damages and harms, all to Plaintiff's great detriment.

69. Alternatively, as Defendant considered Plaintiff's protected classes in the foregoing discrimination and conduct, Plaintiff is entitled to a charge for mixed-motive discrimination, which entitles Plaintiff to an award of Attorney's fees.

WHEREFORE, Plaintiff, James DeAngelo, hereby demands judgment in his favor and against Defendant, City of Philadelphia, for all damages and relief available and just under the law.

**COUNT TWO**
**Retaliation – Associational Disability**
*Americans with Disabilities Act ("ADA"), 42 U.S.C.A. §12102 et. seq.*
**Plaintiff v. Defendant City of Philadelphia**

70. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

71. Defendant City of Philadelphia is an employer under the ADA as it is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of 20 or more calendar weeks, in the current or preceding calendar year.

72. Police Officer Archie made a request for a Hardship, or reasonable accommodation, on February 25, 2022 due to the disability and/or disabilities of Officer Archie's biological daughter.

73. Plaintiff and Defendant Ortiz-Rodriguez were aware of Police Officer Archie having a disabled biological daughter.

74. Plaintiff and Defendant Ortiz-Rodriguez were further aware that Police Officer Archie's daughter's disability onset within the past few years.

75. Plaintiff was prepared to approve the Hardship request of Police Officer Archie and opposed, and took protected activity, in his opposition to Defendant Ortiz-Rodriguez's insistence that Plaintiff deny the Hardship request, which Plaintiff observed and considered to be the result of Associational Disability Discrimination.

76. Plaintiff signed an approval of the Hardship request.

77. Defendant had no hardship as defined under the ADA with regard to Plaintiff's Hardship request.

78. As a direct and proximate result of Plaintiff having opposed Defendant Ortiz-Rodriguez's insistence to summarily and wrongly deny the request and his approving of the

request, Plaintiff was subject to temporal and severe adverse employment action, including having been demoted and removed as Administrative Lieutenant of the 26th District.

79. The demotion and removal Plaintiff suffered contemporaneous and/or after his opposition conduct to disability discrimination would have dissuaded a reasonable person from taking the same protected activity and thus qualify/qualifies as an adverse employment action.

80. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered loss of wages, including loss of back pay, loss of front pay, loss of amenities of employment and out-of-pocket expenses, emotional damages, embarrassment, humiliation, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

81. Alternatively, as Defendant considered Plaintiff's protected activity in the foregoing retaliation and conduct, Plaintiff is entitled to a charge for mixed-motive discrimination, which entitles Plaintiff to an award of Attorney's fees.

WHEREFORE, Plaintiff, James DeAngelo, hereby demands judgment in his favor and against Defendant, City of Philadelphia, for all damages and relief available and just under the law.

### COUNT THREE
### Harassment, Hostile Work Environment, Discrimination, Disparate Treatment, and Retaliation
*Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 - 963*
### Plaintiff v. Defendants

82. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

83. Defendant is an employer under the PHRA because it is an employer in the Commonwealth of Pennsylvania and has the requisite number of employees to be subject to the PHRA.

84. Defendant Ortiz-Rodriguez is a person or employer and therefore subject to liability under the PHRA as she compelled, coerced, aided, abetted, and/or otherwise caused the discriminatory and retaliatory conduct alleged herein.  43 P.S. §955(e)

85. Plaintiff has protected classes under the PHRA in his color and race.

86. Plaintiff took protected activity in his opposition to associational disability discrimination and other wrongful conduct of Defendant Ortiz-Rodriguez.

87. Defendants harassed, discriminated against, and retaliated against Plaintiff as alleged *Supra*.

88. As a direct and proximate result of Defendants' harassment, discrimination, and/or retaliation, Plaintiff has suffered loss of wages including loss of back pay, loss of front pay, loss of amenities of employment, out of pocket expenses, emotional damages, pain and suffering, loss of reputation, and other similar damages, all to Plaintiff's great detriment.

89. Plaintiff seeks payment of costs and reasonable attorney's fees.

90. Alternatively, as Defendants considered and/or were motivated by wrongful discrimination, Plaintiff is entitled to a charge for mixed-motive discrimination and thus the imposition of attorney's fees.

WHEREFORE, Plaintiff, James DeAngelo, hereby demands judgment in his favor and against Defendant, City of Philadelphia, and against Defendant, Captain Maria V. Ortiz-Rodriguez, for all damages and relief available and just under the law.

## COUNT FOUR
### Retaliation in violation of FMLA
*Family Medical Leave Act "FMLA", 29 USCA 2601 et. seq.*
### Plaintiff v. Defendant City of Philadelphia

91. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

92. Defendant City of Philadelphia has the requisite number of employees (more than 50) and is engage in commerce that crosses state borders such that it is an eligible employer required to provide employees federally protected leave under the Family and Medical Leave Act ("FMLA").

93. Defendant retaliated against Plaintiff in violation of the FMLA as (1) Plaintiff was approved for intermittent FMLA leave, (2) he suffered adverse employment decision(s) or actions, and (3) the adverse decision(s) was/were casually related to his leave.

94. Defendant mistreated Plaintiff and retaliated against Plaintiff for having been approved for FMLA leave by having demoted and removed him from 5 squad.

95. The temporal proximity of Plaintiff having been approved and eligible for intermittent FMLA and the foregoing disparate treatment are unusually suggestive of retaliation and raise a presumption that Plaintiff's termination was/were causally related to his FMLA.

96. Alternatively, there is /are a series of antagonistic or animus towards Plaintiff that support retaliation.

97. The acts mentioned above were willful, wanton, malicious, reckless, oppressive, and justify the award of liquidated damages.

98. As a direct and proximate result of Defendant's retaliation, Plaintiff has been deprived of economic benefits including, but not limited to, lost wages, lost back pay, lost front pay, medical bills, and out-of-pocket expenses.

99. Plaintiff demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

100. In terminating Plaintiff, Defendant considered his leave of absence under the FMLA and thus under mixed-motive, Plaintiff is entitled to attorney's fees.

101. Plaintiff seeks re-employment as a form of relief under the FMLA.

WHEREFORE, Plaintiff, James DeAngelo, hereby demands judgment in his favor and against Defendant, City of Philadelphia, for all damages and relief available and just under the law.

## COUNT FIVE
### Intentional Infliction of Emotional Distress
### Plaintiff v. Defendant Captain Maria V. Ortiz-Rodriguez

102. Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

103. Plaintiff was subjected to Intentional Infliction of Emotional Distress by and from his direct supervisor, Defendant Ortiz-Rodriguez, which binds Defendant, City of Philadelphia, to this wrongful conduct.

104. Defendant's actions and/or conduct was/were extreme and outrageous.

105. Defendant's actions and/or conduct was/were intentional and reckless.

106. Defendant's actions and/or conduct caused Plaintiff severe emotional distress.

107. During Plaintiff's employment, Defendant intentionally and recklessly harassed and inflicted emotional injury on Plaintiff by subjecting him to outrageous treatment beyond all bounds of decency.

108. Defendant's verbally, mentally, and/or physically abused Plaintiff and treated him in a demeaning and inferior manner, which no reasonable person could be expected to endure.

109. As a direct and proximate result of Defendant's malicious and conscious wrongful actions and/or conduct, Plaintiff has sustained severe emotional distress resulting in bodily injury and/or damages supported by medical evidence.

110. As a result of Defendant's actions and/or conduct, the Plaintiff has suffered damages including but not limited to pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational damage and harm, diminishment of career opportunities, and other harm both tangible and intangible.

WHEREFORE, Plaintiff, Lieutenant James DeAngelo, demands all relief from Defendant, Captain Maria Ortiz-Rodriguez, recoverable under law and as deemed reasonable and just by the Court.

DEREK SMITH LAW GROUP, PLLC

_____
CHRISTOPHER J. DELGAIZO, ESQUIRE
Attorney for Plaintiff

1835 Market Street, Suite 2950
Philadelphia, PA 19103
T: 215-391-4790
Fax: 215-501-5911
Email: Chris@dereksmithlaw.com

Date: September 1, 2023